**Affirmed and Memorandum Opinion filed February 7, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00743-CV

### FAR EAST ENTERPRISES, INC., Appellant

### V.

### NUMBER ONE SOUTHERN FOOD MART INC. D/B/A PHO NUI BISTRO AND MYLINH THI HOANG, Appellees

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2009-49098**

## M E M O R A N D U M   O P I N I O N

In this commercial lease dispute, Far East Enterprises, Inc. ("Far East") appeals a judgment in favor of Number One Southern Food Market Inc. d/b/a Pho Nui Bistro ("Bistro") and MyLinh Thi Hoang. Far East contends that the trial court erred by awarding Bistro (1) damages because there is insufficient evidence that Far East "failed to comply with the lease agreement prior to appellees' breach;" and (2) attorney's fees because Bistro "failed to properly segregate recoverable from unrecoverable fees." We affirm the trial court's judgment.

## Background

Bistro entered into a commercial lease with Far East in March 2007. MyLinh Thi Hoang signed the lease on behalf of Bistro and personally guaranteed the lease. Hoang and Joseph Pham are co-owners of Bistro. The leased space is approximately 2,800 square feet and is located on the second floor of a building owned by Far East on Bellaire Boulevard in Houston, Texas. After remodeling the leased space, Hoang and Pham began operating an upscale restaurant and banquet hall in the space under the name Paloma Cafe.

Water leaked through the roof into the restaurant after rainfall in October 2008. Water leaked again into the restaurant in November 2008, requiring the restaurant to be closed for two weeks for repairs. The roof leaked again after rainfall in December 2008, and in January, February, and March 2009, causing damage to the restaurant. Hoang and Pham orally reported each leak either in person or by telephone to Far East's property manager, Patrick Dang. According to Hoang and Pham, Dang said he would "take care of it." Water nonetheless continued to leak through the roof every time it rained. April 17, 2009 was the last day the restaurant operated; on that date, there was ankle-high water in the restaurant after rainfall.

Hoang sent Dang a letter on April 20, 2009, informing Dang that she and Pham were closing the restaurant temporarily because of the water leaks. This was the first written notice of the problem. On April 27, 2009, Hoang sent a letter asking Dang to inspect the premises and look at damage to the restaurant.

On May 9, 2009, Dang addressed a letter to Paloma Cafe asserting that the leaks were caused by the restaurant's vent hoods; Dang advised Paloma Cafe to secure contractors to "assess the situation in question." On May 22, 2009, Dang sent a letter to Paloma Cafe stating, "Because of your non-compliance to several of

our past requests to remedy the water leaks coming from your ceiling, we have hired a contractor to fix the leaks and prevent any future damages." Dang attached the contractor's invoice and asked Paloma Cafe to "make repairs to such damages resulting from water penetration from [] vents." On May 27, 2009, Dang sent Paloma Cafe "a final invoice for the repairs made."

Hoang and Pham moved out of the premises in May 2009 and never reopened the restaurant. Hoang and Pham did not pay for the repairs made by Far East and did not pay rent for May or any following month.

Far East sued Bistro and Hoang on July 31, 2009, alleging claims for breach of the lease agreement and breach of the guaranty agreement. Bistro and Hoang counter-sued Far East on February 22, 2010, alleging claims for breach of contract, breach of implied warranty of suitability, and constructive eviction.

A jury trial was held on May 16, 2011. The jury found that neither Bistro nor Far East complied with the lease and that Far East failed to comply with the lease first. The jury awarded Bistro $2,750 in damages for "repair to the premises and equipment." On May 31, 2011, Bistro filed a motion to sign judgment "against Far East for the sum of $2,750" and award "$25,000 in attorney fees pursuant to a stipulation previously filed with the court."

Far East filed a response to Bistro's motion on June 11, 2011, asking the trial court not to award Bistro attorney's fees because Bistro failed to segregate its fees for the three claims it brought. Far East argued that "[s]ince there was no stipulation by the parties and no finding of fact by the jury of the reasonable and necessary attorney's fees for Bistro's breach of contract claim against Far East, the Court should not grant any attorney's fees to Bistro."

The trial court signed a judgment on June 17, 2011, awarding Bistro $2,750

3

in damages and $25,000 in attorney's fees "pursuant to a written stipulation previously filed with the court and incorporated by reference." Far East filed a motion for new trial on July 15, 2011, arguing that (1) the evidence is factually insufficient to support the jury's finding that Far East first failed to comply with the lease; and (2) the trial court erred by awarding Bistro "full attorney's fees because [Bistro] failed to segregate [its] attorney's fees from recoverable and unrecoverable attorney's fees."

The trial court signed an order denying Far East's motion for new trial on August 10, 2011. Far East filed a timely appeal.

**Analysis**

## I. Legal and Factual Sufficiency

In its first issue, Far East contends that the evidence is legally and factually insufficient to support the jury's finding that Far East "failed to comply with the lease agreement prior to the appellees' breach."

Legal insufficiency challenges may be sustained only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)).

We must consider evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id*. at 822. If the evidence allows only one inference, neither jurors nor the reviewing court may

4

disregard that evidence. *Id.* "[T]he traditional scope of review does not disregard contrary evidence if there is no favorable evidence (situation (a) above), or if contrary evidence renders supporting evidence incompetent (situation (b) above) or conclusively establishes the opposite (situation (d) above)." *Id.* at 810-11. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* at 822. Accordingly, the ultimate test for legal sufficiency always must focus on whether the evidence would enable reasonable and fair-minded jurors to reach the verdict under review. *Id.* at 827. Legal sufficiency review in the proper light must credit favorable evidence if reasonable jurors could do so, and must disregard contrary evidence unless reasonable jurors could not do so. *Id.* The reviewing court cannot substitute its judgment for that of the trier of fact if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

In reviewing factual sufficiency, we must consider and weigh all the evidence. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id.*

The jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See City of Keller*, 168 S.W.3d at 819. Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict. *See id.* at 820.

Far East argues that the "entire issue of breach of contract hinges on the [sic] whether Far East properly conducted repairs to the roof in accordance with the Lease Agreement." Far East argues that the lease is "clear and unequivocal," and

that Far East's duty to conduct repairs is triggered by "Bistro's written notice of the need for repairs."

According to Far East, its duty to repair the roof was not triggered until April 20, 2009, when Bistro first received written notice from Bistro that the roof needed repair. In that regard, Far East claims that Bistro's prior verbal notifications of the water leaks and roof problems did not trigger its contractual duty to conduct roof repairs because (1) the lease provision allowing a tenant to verbally notify Far East of an emergency is a more general provision that does not control over the specific written notification provision; and (2) "terms stated earlier in an agreement must be favored over subsequent terms" and "the written notice is on page three" while the "provision with the emergency term is contained on exhibit 'D' of the Lease Agreement on page fifteen." Therefore, Far East contends that "the earliest Far East could have breached the Lease Agreement was a reasonable time after April 20, 2009."

In construing a contract, the primary concern is to ascertain the parties' intent as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To ascertain those intentions, the entire contract is examined in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *Id.* No single provision should be given controlling effect, but all provisions must be construed in reference to the whole. *Id.*

The lease provided as follows:

LESSOR'S REPAIRS

A. Lessor at its own cost and expense, shall maintain only the roof, foundation and the structural soundness of the exterior walls of the building of which the Premises are a part in good repair, reasonable wear and tear excluded. . . . Lessee shall immediately give Lessor

6

written notice of defect or need for repairs, after which Lessor shall have reasonable opportunity to repair it or cure such defect. Lessor's obligation to maintain the aforementioned items shall be limited solely to the cost of such repairs or maintenance or the curing of any defect in the same.

RULES AND REGULATIONS

1. SERVICE REQUEST: All service requests are to be reported promptly and directly to Landlord's designated agent during normal office hours, except emergencies which shall be reported immediately at any time. (An answering service will take a message if personnel are unavailable).

At trial, Far East's property manager Dang acknowledged that the lease required tenants to give written notice of roof repair needs to Far East unless there was an emergency. Dang also agreed that the lease allowed tenants to report an emergency service request verbally. Far East does not dispute on appeal that the water leaks constituted an emergency and that Pham and Hoang verbally notified Far East of the water leaks when they occurred in October, November, and December 2008, as well as in January, February, and March 2009. The evidence showed that the water leaks were severe enough to cause the restaurant to close and cause damage to the restaurant floor, walls, ceiling, and equipment.

The evidence supports a conclusion that the leaks were severe enough to constitute an emergency authorizing oral notification. The jury heard that Pham and Hoang orally reported the numerous water leaks to Dang as allowed by the lease agreement; that Dang was aware of the water leaks starting October 2008; and that Dang did not undertake roof repairs after he was told about the water leaks until May 2009. Therefore, there was legally and factually sufficient evidence to support a finding that Far East's duty to make roof repairs was triggered by Pham and Hoang's verbal notification and that Far East failed to properly conduct repairs to the roof in accordance with the lease and thus breached the lease.

7

Far East further contends that "there is sufficient evidence to support Appellees' breach of the Lease Agreement reaching as far back as September 2008" or "at the latest three days before sending written notice of needed repairs." Far East contends that Bistro and Hoang were responsible for 21.72 percent of the taxes that were assessed on Far East's building from March 12, 2007 to March 12, 2012. Far East asserts that Hoang testified that "she was provided notice of the demand to make the tax payments 'right after the hurricane' on September 13, 2008," and that Hoang admitted receiving a demand letter for unpaid taxes by April 17, 2009. According to Far East, this evidence establishes that Bistro breached the lease first.

Hoang's trial counsel's question asked: "[w]hen is the first time the landlord made a demand that you pay taxes on the lease?" Hoang answered: "It's far right after the hurricane, about that time." Hoang later clarified that the first time she "had ever been given a demand for tax payments" was on April 17, 2009, when she received a letter from Dang. Hoang testified that she never received a demand for tax payments for the year 2007, and that she was given the first demand for 2008 taxes "sometime on or after March 2 of '09." Hoang also testified that, based on an explanation she received from Dang's brother at the time she entered the lease, she believed that the taxes were included in her monthly common area maintenance payments.

Because the record contains conflicting evidence, and the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the jury was free to believe that Hoang did not receive any demand for the payment of taxes before April 17, 2009. This was several months after Hoang and Pham verbally notified Far East of the water leaks in October, November, and December 2008, and in January, February, and March 2009, which triggered Far

East's duty to undertake roof repairs.

Accordingly, the evidence was legally and factually sufficient to support the jury's finding that "Far East failed to comply with the lease agreement prior to appellees' breach." We overrule Far East's first issue.

## II. Attorney's Fees

In its second issue, Far East contends that the trial court erred by awarding attorney's fees because Bistro "failed to properly segregate recoverable from unrecoverable fees." Bistro and Hoang argue that Far East waived this issue because it first raised its segregation complaint in its response to Bistro's Motion to Sign Judgment and failed to raise it at trial. Assuming without deciding that Far East properly preserved its segregation complaint for appeal by raising this complaint in its response, we conclude that this complaint is without merit.

In response to Bistro's Motion to Sign Judgment, Far East argued that "[s]ince there was no stipulation by the parties and no finding of fact by the jury of the reasonable and necessary attorney's fees for Bistro's breach of contract claim against Far East, the Court should not grant any attorney's fees to Bistro." On appeal, Far East claims "[i]t is beyond dispute that Appellees reasonable and necessary attorney's fees stipulated to related solely to work performed on claims for which attorney's fees are not recoverable." Far East also claims that there was no agreement "as to the amount of Appellees' reasonable and necessary attorney's fees for their claim of breach of contract, and there was no agreement between the parties mandating that Appellees receive $25,000 upon a successful breach of contract claim."

The stipulation the parties entered into provides as follows:

W. Reasonable and necessary attorney's fees for Plaintiff and Counter-Defendant is $35,000.

9

X. Plaintiff and Counter-Defendant's reasonable and necessary attorney's fee would only be recoverable upon an affirmative finding by the jury that the Defendants breach the Lease Agreement.

Y. Reasonable and necessary attorney's fees for Defendants and Counter-Plaintiffs is $25,000.

Z. Defendants and Counter-Plaintiffs' reasonable and necessary attorney's fee would only be recoverable upon an affirmative finding by the jury that the Defendants breach the Lease Agreement.

Contrary to Far East's contention, the stipulation clearly states that reasonable and necessary attorney's fees in the amount of $25,000 will be recoverable only upon an affirmative finding of a breach of the lease. The stipulation makes the recovery of the attorney's fees dependent upon a finding of breach of contract; the jury found that Far East first breached the lease. Therefore, Far East is incorrect in its assertion that "attorney's fees stipulated to related solely to work performed on claims for which attorney's fees are not recoverable;" and that "there was no agreement between the parties mandating that Appellees receive $25,000 upon a successful breach of contract claim."

Far East also argues that "the stipulation between the parties that Appellees' 'reasonable and necessary attorney's fee would only be recoverable upon an affirmative finding by the jury that the Defendants breach the Lease Agreement' makes no sense because Appellees were 'Defendants' at trial." Far East further argues that "[e]ven if the Court construes this as a clerical error, the stipulation does not extend to the proposition that Appellees would automatically be awarded all of their attorney's fees [sic] solely a positive outcome on their claim for breach of contract."

Neither the judgment nor the stipulation quoted above indicate that Bistro was awarded attorney's fees for any claims other than the breach of contract claim. The trial court's judgment states that Bistro is entitled to reasonable and necessary

attorney's fees in the amount of "25,000 pursuant to a written stipulation previously filed with the court and incorporated by reference." Therefore, there is no support for Far East's contention that Bistro was awarded "all of their attorney's fees" or was awarded attorney's fees for any claims other than its breach of contract claim.

Accordingly, we overrule Far East's second issue.

## Conclusion

We affirm the trial court's judgment.

/s/    William J. Boyce
       Justice

Panel consists of Justices Boyce and McCally and Senior Justice Mirabal.[1]

---

[1] Senior Justice Margaret Garner Mirabal sitting by assignment.

11